UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TYRON RICHMOND, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:25-cv-00367-JSD |
| CASI BULLOCK, et al., | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Self-represented Plaintiff Tyron Richmond is a state-prisoner confined at the Eastern Reception, Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri. He brings this 42 U.S.C. § 1983 civil rights action against three employees at ERDCC. The matter is now before the Court upon Plaintiff's motion for leave to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs. ECF No. 2. As explained in detail below, the motion will be granted, and the surplus amount that Plaintiff overpaid will be returned to him. Furthermore, because Plaintiff is now proceeding *in forma pauperis*, his Complaint is subject to review under 28 U.S.C. § 1915. Based on such review, the Court will dismiss this case for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). As such, Plaintiff's motion for appointment of counsel will be denied as moot.

**Motion to Proceed *In Forma Pauperis***

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has

insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

In this case, Plaintiff filed his complaint on March 21, 2025, along with his motion to proceed *in forma pauperis*. ECF Nos. 1-2. Approximately six weeks later, Plaintiff filed an inmate account statement and paid the full filing fee amount of $405. ECF Nos. 4-5. Over two months have passed since the filing fee was paid in full and Plaintiff has not withdrawn his motion to proceed *in forma pauperis*. Because *in forma pauperis* status confers benefits on litigants aside from payment of the filing fee in installments and because Plaintiff has not withdrawn his motion, the Court will assume that Plaintiff still seeks such status in this case. After review of the financial information submitted in support of the motion, the Court will grant Plaintiffs' motion to proceed *in forma pauperis*. Plaintiff could now avail himself of the other benefits of *in forma pauperis* status, such as reduced copy rates and service on defendants by the U.S. Marshal's

Service. The Court will direct the Clerk to refund Plaintiff the surplus administrative fee.[1]

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also*

[1] The Court's filing fee for bringing a civil action (filed after December 1, 2023) is $405, which includes a statutory filing fee of $350 and an administrative fee of $55. *See* 28 U.S.C. § 1914(a) ("The clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal, or otherwise, to pay a filing fee of $350"); 28 U.S.C. § 1914(b) ("The clerk shall collect from the parties such additional fees only as are prescribed by the Judicial Conference of the United States"); Par. 14 of the Judicial Conference Schedule of Fees, District Court Miscellaneous Fee Schedule (issued in accordance with 28 U.S.C. § 1914) (effective on Dec. 1, 2023) ($55.00 administrative fee added to the statutory fee for filing a civil action in district court).

However, the Judicial Conference expressly provided that the additional $55.00 "fee does not apply to applications for a writ of habeas corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." *Id.* Since Plaintiff is now proceeding *in forma pauperis*, the Court will direct that the $55 administrative fee be returned to him.

*Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

**The Complaint**

Plaintiff Tyron Richmond, an inmate at ERDCC, initiated this 42 U.S.C. § 1983 action against three defendants: (1) Casi Bullock (ERDCC nurse); (2) Unknown Lashley (ERDCC correctional officer); and (3) Unknown Name (ERDCC employee). ECF No. 1. Plaintiff names defendants Bullock and Lashley in both their individual and official capacities. *Id.* at 2-3. He does not state a capacity for defendant Unknown Name.

The allegations of the Complaint are as follows. Plaintiff attempted suicide while being held in an ERDCC suicide observation cell on June 3, 2024. *Id.* at 4. Plaintiff found a string in his cell which he wrapped around his neck "for the purpose of strangling" himself. After a medical emergency was called, Plaintiff alleges that nurse Casi Bullock "placed both of her hands on [Plaintiff's] face, effectively cutting off [his]

airways to both [his] mouth and [] nose, in an attempt to suffocate [Plaintiff] to death." However, Plaintiff admits that "[a]s a result of Casi Bullock's suffocation attempt [Plaintiff] was shocked back into consciousness." When Plaintiff "woke up," he asked Bullock why she covered his airways, and she responded: "Because I do what I want." *Id.*

As Plaintiff was coughing and hacking to recover his breathe, he asserts that defendant Lashley "administer[ed] a chemical agent upon [his] person, while [he] was non-combative [and] cuffed behind [his] back and in no way a threat to neither staff nor [himself]." *Id.* Plaintiff alleges that the actions of defendants Bullock and Lashley were in retaliation for the grievances that Plaintiff had filed against them "and/or their friends or loved ones on numerous occasions." *Id.* at 5. He asserts that these two defendants "want [him] dead" and that this incident was their attempt on his life.

As to defendant Unknown Name, Plaintiff describes this defendant as the "staff who searched the suicide cell before my confinement to that cell" and "failed to protect me by knowingly allowing me to obtain the string with which I used to strangle myself." *Id.*

As a result of this incident, Plaintiff states that he suffered bruises, contusions, severe neck pain, PTSD, further suicide attempts, sleep deprivation, chemical agent burns, prolonged isolation in a single-man cell, sensory deprivation from long-term segregation, night terrors, anxiety, loss of weight and vision, and loss of personal relationships. *Id.* at 5 & 10. Many of these injuries appear to be the result of Plaintiff's own suicide attempt and not any actions by the defendants. Plaintiff seeks damages and

injunctive relief. *Id.* at 12. For injunctive relief, he requests that a conduct violation (that he does not discuss or explain) be expunged, that defendant Bullock lose her "license to practice medicine," and that he be released from administration segregation. *Id.*

Plaintiff attached exhibits to the Complaint and filed supplemental grievance documents in support of his claims.[2] ECF Nos. 1-1, 7, 8. The facts stated in Plaintiff's June 13, 2024 Informal Resolution Request are essentially the same as those alleged in the Complaint except Plaintiff states that Lashley sprayed him with a chemical agent "when" he questioned Bullock as to why she covered his airways to revive him. ECF No. 1-1 at 1. The ERDCC response, dated July 10, 2024, states that the incident was reviewed and investigated but that "[o]utcomes are considered confidential." *Id.* at 2. In what appears to be Plaintiff's handwritten Offender Grievance response, dated August 5, 2024, Plaintiff questions how defendant nurse Bullock's actions could be considered standard "medical procedures and custody procedures." *Id.* at 3. He also states that "while she [was] walking out [he] spat on the ground" and "that's when" Lashley sprayed him. *Id.*

---

[2] In assessing whether a complaint sufficiently states a valid claim for relief, courts may consider materials that are attached to the complaint as exhibits. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (citations omitted); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

However, some of the documents filed by Plaintiff are not relevant to the incident at issue here. *See* ECF Nos. 1 at 6 (printout of email from unknown inmates' mother); 7 at 1-4 (documents regarding grievance no. 23-1997, which was initiated at least six months before the incident at issue); 8 at 1-3 (documents regarding a new grievance filed almost four months after this case was opened, naming parties who are not defendants in this matter). These irrelevant exhibits will not be discussed.

## Discussion

After careful review and liberal construction of the allegations of Plaintiff's Complaint, the Court finds that this case must be dismissed for failure to state a claim upon which relief may be granted. As discussed in more detail below, Plaintiff fails to allege sufficient facts to support claims of excessive force, deliberately indifferent medical care, retaliation, failure to protect, or official capacity claims against defendants' employers. As such, this case will be dismissed under 28 U.S.C. § 1915(e)(2)(B).

### I. Eighth Amendment Claims

The Eighth Amendment's prohibition on cruel and unusual punishment, as applied to States through the fourteenth amendment, limits the conditions in which a State may confine convicted criminals. *Robinson v. California*, 370 U.S. 660 (1962); *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has explained this limit as a prohibition on punishments that "involve the unnecessary and wanton infliction of pain" including those that are "totally without penological justification." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173, 183 (1976)); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986).

#### a. Deliberately Indifferent Medical Care: Nurse Bullock

Plaintiff alleges that nurse Bullock violated his Eighth Amendment right to avoid cruel and unusual punishment when she "attempted to kill" him by covering his mouth and nose to awaken him from an unconscious state after he attempted suicide. ECF No. 1 at 4-5. Because it is unclear from the pleadings whether Plaintiff intends this claim to be

brought under the Eighth Amendment for deliberately indifferent medical care or excessive force, the Court will examine both possible claims.

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on a deliberate indifference claim, a prisoner plaintiff must demonstrate that he suffered from an objectively serious medical need, and that defendants actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted). An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference. *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

Here, Plaintiff states that he attempted suicide by strangulation, and that he was unconscious when defendant nurse Bullock arrived to provide medical care. Plaintiff alleges that Bullock's method of reviving him—covering his airways—constituted deliberately indifferent medical care. However, Plaintiff admits that "[a]s a result" of the "medical procedure" taken by Bullock, he was "shocked back into consciousness." And although Plaintiff alleges a long list of injuries in this case, *see* ECF No. 1 at 10, none of them appear to be a result of the medical care provided by Bullock.

Undoubtedly, Plaintiff was suffering from a serious medical need when Bullock arrived to provide medical care. But there is no evidence supporting the assertion that Bullock deliberately disregarded Plaintiff's need. Bullock's actions were not "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson*, 756 F.3d at 1066. In fact, they were the opposite—she provided medical care that possibly saved Plaintiff's life. It appears that Plaintiff simply did not like the method that nurse Bullock used. Nevertheless, Plaintiff cannot choose the method of medical treatment and his disagreement with the care provided is not enough to state a deliberate indifference claim. *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) ("[I]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment."); *East v. Minnehaha Cnty.*, 986 F.3d 816, 821 (8th Cir. 2021) (affirming dismissal of plaintiff's deliberately indifferent medical care claim that was based on "mere disagreements with treatment decisions" and did not "approach

criminal recklessness"). As such, Plaintiff's Complaint fails to state an Eighth Amendment claim of deliberately indifferent medical care against nurse Bullock.

**b. Excessive force: Nurse Bullock**

To the extent that Plaintiff is also alleging that Bullock's actions constituted excessive force, this claim also fails. According to the Supreme Court, the question in Eighth Amendment excessive force cases is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)). Although Plaintiff makes the conclusory allegation that Bullock was trying to kill him, there is no evidence that Bullock was acting maliciously or sadistically to cause harm. And Plaintiff provides no evidence that her actions did cause harm. Instead, he admits that Bullock revived him.

Although self-represented complaints must be liberally construed, *Erickson*, 551 U.S. at 94, nevertheless, such pleadings cannot be conclusory, and must set forth facts that, taken as true, state a claim as a matter of law. *Johnson v. Stark*, 717 F.2d 1550, 1552 (8th Cir. 1983). A court will not supply additional facts or create a legal theory assuming facts that have not been pleaded. *Stone*, 364 F.3d at 914. The Court "is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002). To state a plausible cause of action, "[a] pleading that merely pleads . . . naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010).

In this case, there are no facts plead which suggest that nurse Bullock was trying to cause Plaintiff harm. Plaintiff's conclusory accusation that nurse Bullock violated his Eighth Amendment rights when she allegedly tried to kill him, fails to state a viable claim of excessive force.

**c. Excessive Force: Correctional Officer Lashley**

Plaintiff also alleges an excessive force claim against defendant correctional officer Lashley. According to Plaintiff, Lashley violated his Eighth Amendment rights by applying excessive force when she sprayed him with a chemical agent while he "was cuffed behind [his] back, submissive and completely non-combative." ECF No. 1 at 7. However, Plaintiff admits in his grievance filings that he was sprayed when he questioned Bullock's method of reviving him and when he "spat" as Bullock was walking out. ECF No. 1-1 at 3.

"[Correctional] Officers may reasonably use force in a good-faith effort to maintain or restore discipline but may not apply force maliciously and sadistically to cause harm." *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006) (quoting *Hudson*, 503 U.S. at 7). "Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, *i.e.,* they are using it maliciously and sadistically." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008) (citing *Hudson*, 503 U.S. at 9). The test for reasonableness or the good-faith application of force depends on the following:

> whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by

> the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.

*Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (citing *Hudson*, 503 U.S. at 7).

In this case, although Plaintiff was handcuffed when he was sprayed, he was also verbally questioning nurse Bullock and spitting. The only injury Plaintiff appears to allege that resulted from this spraying is burns from the chemical agent, but he does not report any required medical treatment or long-term effects of the spraying. He also does not assert that the amount of spray used was excessive or that it was applied to a sensitive area. Based on the factors above, Plaintiff has not plead enough facts for the Court to find Lashley's actions to be an unreasonable use of force. *See Peterson v. Heinen*, 89 F.4th 628, 636 (8th Cir. 2023) (finding no excessive force where correctional officer used chemical spray on a hand-cuffed prisoner who was cursing, threatening, and spitting at officers); *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000) (holding that "a limited application of [chemical spray] to control a recalcitrant inmate constitutes a tempered response by prison officials when compared to other forms of force" (cleaned up)); *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) (holding that the use of mace, tear gas, or other similar chemical agents does not constitute cruel and unusual punishment when reasonably necessary to subdue a recalcitrant prisoner, even where the prisoner is locked in his cell or in handcuffs). As such, Plaintiff fails to state an Eighth Amendment excessive force claim against correctional officer Lashley.

## II. Retaliation Claims

Plaintiff also alleges that Bullock and Lashley violated his First and Fourteenth Amendment rights "when they engaged in this sadistic and malicious behavior out of retaliation for [Plaintiff] pursuing [his] right to file grievances both upon them and their peers." ECF No. 1 at 7. As to nurse Bullock specifically, Plaintiff claims she tried to kill him in retaliation for grievance filings.

The right to be free from retaliation for availing oneself of the grievance process is clearly established in the Eighth Circuit. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013) (citing *Nelson v. Shuffman*, 603 F.3d 439, 449-50 (8th Cir. 2010)). "To succeed on [a] § 1983 retaliation claim, [a plaintiff] must prove that he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against [him] that would chill a person of ordinary firmness from engaging in that activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). Both filing a prison grievance and filing an inmate lawsuit are protected First Amendment activities. *Id.* According to the Eighth Circuit, the Court should consider Plaintiff's own actions in response to defendants' alleged retaliation, as evidence of what a person of ordinary firmness would have done. *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020) (citing *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002) ("[T]he record reflects … [plaintiff] continued to speak out … on numerous occasions.").

Plaintiff here admits to having filed grievances against "Bullock and Lashley and/or their friends or loved ones on numerous occasions" before the June 3rd incident. ECF No. 1 at 5. Based on exhibits filed in this case, Plaintiff continued to file grievances after the

incident. *See* ECF Nos. 1-1 at 1, 8 at 3. Plaintiff does not allege that the defendants' actions discouraged him from filing future grievances and nothing in the record indicates that it did. Plaintiff does not assert that Bullock and Lashley's actions would chill a person of ordinary firmness from filing grievances, and his own actions indicate that it would not. As such, Plaintiff fails to state a claim of First Amendment retaliation against either defendant Bullock or Lashley.

**III. Official Capacity Claims**

In addition to the individual-capacity claims discussed above, Plaintiff also names defendants Bullock and Lashley in their official capacities. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Correctional officer Lashley is employed by ERDCC, which is a Missouri Department of Corrections (MDOC) facility. As such, Lashley is an employee of the State of Missouri and the official capacity claim against her is actually a claim against the State. However, "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989); *see also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not

a person under § 1983”). Moreover, in the absence of a waiver, the Eleventh Amendment bars suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.,* 147 F.3d 741, 744 (8th Cir. 1998). For these reasons, Plaintiff's official capacity claim against Lashley must be dismissed.

As for defendant nurse Bullock, she is presumably an employee of Centurion Health, the contracted health care provider for incarcerated people at MDOC institutions statewide since November 15, 2021. *See* Centurion Health News, https://teamcenturion.com/newsroom/ centurion-health-begin-correctional-health-contract-for-missouri-department-of-corrections/ (last visited 8/4/2025). As such, the official capacity against Bullock is actually against her employer Centurion. In order to prevail on an official capacity claim against Centurion, Plaintiff must establish the liability of Centurion itself for the alleged conduct. *See Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). In order to demonstrate such liability, Plaintiff must show that the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).

Plaintiff's pleadings contain no allegations that any of Bullock's actions were the result of a Centurion official policy, unofficial custom, or its failure to train or supervise, as would be necessary to state an official capacity claim. *See Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or

custom" that caused the alleged deprivation of plaintiff's rights). Therefore, Plaintiff's official capacity claim against nurse Bullock must be dismissed for failure to state a claim.

**IV. Claims Against Defendant Unknown Name**

Finally, Plaintiff also names an unknown party as a defendant, describing this defendant as the "staff who searched the suicide cell before my confinement to that cell" and "failed to protect me by knowingly allowing me to obtain the string with which I used to strangle myself." ECF No. 1 at 5. In general, fictitious parties may not be named as defendants in a civil action. *Phelps v. United States*, 15 F.3d 735, 739 (8th Cir. 1994). Furthermore, it is impermissible to proceed against an indeterminate number of unidentified defendants. *See Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). An action may proceed against a party whose name is unknown, however, if the complaint makes sufficiently specific allegations to permit the identity of the party to be ascertained after reasonable discovery. *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985).

In this case, Plaintiff does not allege enough facts for the Court to discern that there is a responsible party that can be ascertained after reasonable discovery. "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Plaintiff here does not assert that there is any MDOC policy or procedure that requires a correctional officer to

check a cell before confining an inmate into it. Plaintiff does not present any evidence that the cell was cleaned or checked by an officer at some indeterminate time prior to Plaintiff's confinement there. Plaintiff is simply assuming that these events occurred. Moreover, Plaintiff does not explain how he acquired the string used for his suicide attempt and why his access to the string is the responsibility of the unknown named defendant. Without more facts, the Court cannot determine that an unknown named defendant checked the cell, knew of or should have known of the existence of the string, and deliberately disregarded it. In addition, Plaintiff's description of this defendant as "staff who searched the cell" indicates an indeterminate number of unknown named defendants. This is not permissible. As such, Plaintiff fails to state a claim against the Unknown Name defendant and this defendant will be dismissed.

**Conclusion**

Plaintiff's motion to proceed *in forma pauperis* will be granted and the amount Plaintiff overpaid on the filing fee will be returned to him. However, since Plaintiff is proceeding *in forma pauperis*, his pleadings are subject to review under 28 U.S.C. § 1915. Based on such a review, the Court finds that this case must be dismissed for failure to state a claim upon which relief may be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to proceed *in forma pauperis* [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court return to Plaintiff the $55 administrative fee he paid to the Court since he is now proceeding *in forma pauperis* and therefore, that administrative fee is waived.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the Complaint as to any of the defendants because the Complaint fails to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B). Plaintiff's Complaint against defendants Casi Bullock, Unknown Lashley, and Unknown Name is **DISMISSED without prejudice**.

**IT IS FINALLY ORDERED** that Plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED** as moot**.**

Dated this 5th day of August, 2025.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE